UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BOYLAND AUTO GROUP III LLC and
BOYLAND AUTO BGMC LLC,

        Plaintiffs,

   v.                                  Case No. 23-cv-0566-bhl

TONY BOYLAND,

        Defendant.

## ORDER

      After a brief career in major league baseball,[1] Dorian "Doe" Boyland opened a number of used car dealerships in six states, including Wisconsin. *See* Emil Flemmon, *Former MLB Player Becomes Top Car Dealership Owner*, ATLANTA VOICE (Aug. 24, 2019), https://theatlantavoice.com/fomer-mlb-player-becomes-top-car-dealership-owner/. In this case, two of those Wisconsin dealerships—Boyland Auto Group III, LLC d/b/a All-Star Honda and Boyland Auto BGMC, LLC d/b/a All-Star Buick GMC (the Dealerships)—claim that former General Manager Tony Boyland misappropriated their assets. (ECF No. 10 ¶8.) The Dealerships filed this lawsuit in Milwaukee County Circuit Court, alleging claims for conversion, theft, breach of fiduciary duty, fraud, civil conspiracy, and breach of contract. (ECF No. 1-2 ¶¶32-61.) Defendant removed the case to this Court and now seeks to dismiss the fraud and civil conspiracy claims as insufficiently pleaded. (ECF Nos. 1 & 12.) For the following reasons, that motion will be granted but only in part.

---

[1] Doe Boyland's career was brief, but he retains at least one claim to fame. On September 4, 1978, as a rookie infielder, he stepped to the plate for his first major league at bat and, after going down 1-2 in the count, was pulled for a pinch hitter. His replacement proceeded to take strike three looking, thus giving Boyland the distinction of being the only Major Leaguer to suffer a strikeout in his first at bat while already sitting in the dugout. *See* Elena Gustines, *How Do You Mark That in the Score Book?*, N.Y. TIMES, Apr. 3, 2016, at SP7. The Court thanks a former law clerk from Pittsburgh and his family of Pirates fans for bringing this baseball history to the Court's attention.

## FACTUAL BACKGROUND[2]

All-Star Honda and All-Star Buick GMC are Wisconsin limited liability companies that own and operate car dealerships in Wisconsin. (ECF No. 10 ¶¶3-4.) In 2021, Defendant Tony Boyland (Boyland) served as General Manager of both dealerships. (*Id.* ¶8.) According to the complaint, as GM, Boyland conspired with another employee, Yamilet De Jesus (who is not a party to this suit), to misappropriate company assets for personal benefit. (*Id.* ¶9.) Accounting for taxes, the Dealerships claim to have suffered a combined $142,144 in losses based on payroll expenditures fraudulently directed to Boyland and De Jesus. (*Id.* ¶¶11-21.) Additionally, Boyland and De Jesus are alleged to have charged unauthorized airfare, hotel, entertainment, and merchandise expenses—totaling at least $243,989—to their company credit cards. (*Id.* ¶¶22-26.) The complaint also contends that Boyland accepted $401,063 that should have been paid directly to the Dealerships and transferred a $55,000 personal debt to the Dealerships' accounts. (*Id.* ¶¶27-28.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the [non-movant's] favor." *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Roberts*, 817 F.3d at 564 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Roberts*, 817 F.3d at 564-65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Iqbal*, 556 U.S. at 678).

## ANALYSIS

Boyland seeks to dismiss only the Dealerships' claims for fraud and civil conspiracy. (ECF No. 12.) He argues the relevant allegations are too vague to satisfy federal pleading standards. (ECF No. 13 at 1.) The Court agrees with regard to the Dealership's fraud claims, which fail to comply with Federal Rule of Civil Procedure 9(b)'s requirement that such claims be pleaded with

---

[2] These facts are derived from the Dealerships' Amended Complaint, (ECF No. 10), the allegations in which are presumed true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007).

particularity. The civil conspiracy claim, on the other hand, is not subject to Rule 9. While it is sketched only superficially, the allegations are sufficient to survive a motion to dismiss. Boyland's motion will therefore be granted as to the fraud claim but denied as to the Dealerships' civil conspiracy theory.

I.  **The Dealership's Fraud Allegations Are Too Vague.**

Under the liberal notice pleading regime embraced by the federal rules, a civil complaint should not become a dissertation. *See* Fed. R. Civ. P. Rule 8(a) (calling for "a short and plain statement of the [plaintiff's] claim"). In fact, saying too much is just as detrimental as saying too little. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) (citing prolixity as a basis for dismissal). As a result, at the pleading stage, courts generally accept some measure of fuzziness around the edges of a claim, provided the operative complaint alerts the defendants to the nature of that claim and alleges enough to render it plausible. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (holding that "a plaintiff must provide notice to defendants of her claims" and plead more than "sketchy or implausible" allegations). Fraud claims are a different matter. Because of the serious nature and implications of tarring someone with fraud, Rule 9 requires that fraud be pleaded with greater detail. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (explaining that heightened fraud pleading standards minimize the danger of extortionary suits); *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) ("Accusations of fraud can do serious damage to the goodwill of a business firm or a professional person."). Hence, to maintain a fraud claim, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748-49 (7th Cir. 2005) (noting that an "unrefuted" allegation of fraud may induce undue pressure to settle).[3] The Seventh Circuit likens this requirement to "the first paragraph of any newspaper

---

[3] The parties dispute whether the Dealerships' Amended Complaint complies with Wis. Stat. § 802.03(2), which borrows Rule 9(b)'s language almost verbatim, requiring that "the circumstances constituting fraud . . . be stated with particularity." (ECF Nos. 13 & 14.) Though it may ultimately make no difference—the standards essentially overlap—it is Federal Rule of Civil Procedure 9(b), not Section 802.03(2), that governs this case. As "[a] federal court sitting in diversity jurisdiction," this Court "must apply the *substantive* law of the state in which it sits." *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) (emphasis added). That means Wisconsin law supplies the definition of fraud. But "rules as to the sufficiency of pleadings are procedural rather than substantive." *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 707 (N.D. Ill. 1990). Thus, under the circumstances, any conflict between Wisconsin's pleading regime and Federal Rule of Civil Procedure 9(b) resolves in favor of the federal rule. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 410-11 (2010); *see also* Fed. R. Civ. P. 81(c)(1) (the Federal Rules "apply to a civil action after it is removed from a state court"); *Cobb v. Aramark Corr.*

story," which should answer the questions "who, what, when, where, and how." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). But this command may give way somewhat in situations where a defendant, but not the plaintiff, has access to information essential to the fraud claims. *See Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). In those instances, "Rule 9(b) is satisfied by a showing that further particulars of the alleged fraud could not have been obtained without discovery." *Id.* This approach attempts to reconcile the Federal Rules' "twin demands of detail and flexibility" without disrespecting either. *Pirelli*, 631 F.3d at 442.

Boyland argues the Dealerships' Amended Complaint flunks Rule 9(b)'s test. According to him, the pleading cries fraud based on intentional misrepresentation but fails "to identify *who* made the alleged misrepresentation, *when* the alleged misrepresentation was made, *where* the alleged misrepresentation was made, *what* constituted the alleged misrepresentation, *to whom* the misrepresentation was allegedly made, and *what damages* resulted from the alleged misrepresentation." (ECF No. 13 at 3.) The Dealerships, on the other hand, believe they have "set forth with particularity not only the misappropriations and payments made by [Boyland] . . ., but also who he [made them] with, Ms. De Jesus, and that [he made them] in his employment capacity and position." (ECF No. 14 at 3-4.)

Under Wisconsin law, "[t]o succeed in a fraudulent misrepresentation claim, the representation must be of fact and made by the defendant, the representation must be false, and the claimant must have believed the representation was true and relied on it to his or her damage." *Friends of Kenwood v. Green*, 619 N.W.2d 271, 275 (Wis. Ct. App. 2000). To satisfy Rule 9(b), the party alleging fraudulent misrepresentation "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The question here is whether the Dealerships have pleaded enough of the details to establish a Wisconsin fraud claim with particularity. They have not.

The Amended Complaint is exceedingly vague. Its answers to "where?" and "when?" the alleged fraud occurred are sometime in 2021 and (presumably) somewhere in Wisconsin. (ECF No. 10 ¶¶3-5, 8.) It claims that Boyland made a misrepresentation but not "what" that

---

*Servs., LLC*, 937 F.3d 1037, 1040 (7th Cir. 2019) (holding that the Federal Rules "do not apply to filings in state court, even if the case is later removed to federal court," but that actions—like filing an amended complaint—taken after removal are subject to the Federal Rules under Rule 81(c)).

representation was or to "whom" it was made. (*Id.* ¶¶48-59.) And while asymmetrical access to information may explain some of these omissions, the Dealerships do not demonstrate that details as rudimentary as what misrepresentation of fact Boyland allegedly uttered "could not have been obtained without discovery." *Emery*, 134 F.3d at 1323.

This is not a case consistent with the hypothetical the Seventh Circuit floated in *Pirelli v. Walgreen*, under which a court might excuse even the failure to "point to specific misrepresentations made by particular" individuals. 631 F.3d at 446. In that case, the plaintiff alleged that Walgreens pharmacies fraudulently "took prescriptions that called for the less costly form of [certain drugs] and filled them with the more costly form." *Id.* at 438. Walgreens then charged the plaintiff for the "costly forms of [the] drugs that were never prescribed." *Id.* Though it ultimately affirmed dismissal of the fraud claim pursuant to Rule 9(b), the Seventh Circuit registered its disagreement with the district court's suggestion that the Rule required the plaintiff "to point to specific misrepresentations made by particular Walgreens staffers." *Id.* at 446. Instead, the Court called for "flexibility in the face of information asymmetries" and noted that the plaintiff might have satisfied Rule 9(b) simply by demonstrating that Walgreens charged for the more expensive form of the drugs at a much higher rate than any other pharmacy nationwide. *Id.* That made sense in the context of the case—the plaintiff was a third-party payor whose direct interactions with Walgreens' staff were exceedingly limited. *Id.* at 437-38. It would not make sense here, where the plaintiffs are two auto dealerships, and the defendant is their former general manager. Under these circumstances, Rule 9(b) "requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom*, 20 F.3d at 777 (internal quotations omitted). The Dealerships have accomplished only the first of these. That is insufficient. *See Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923-24 (7th Cir. 1992) (affirming dismissal under Rule 9(b) where the operative pleading contained only the general subject matter of an alleged misrepresentation but not the identity of who made the misrepresentation or the time and place at which it was made).

II.  **The Dealerships' Civil Conspiracy Claim is Plausibly Pleaded.**

In Wisconsin, "[c]ivil conspiracy involves 'a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.'" *N. Highland, Inc. v. Jefferson Mach. & Tool, Inc.*, 898 N.W.2d

741, 747 (Wis. 2017) (quoting *City of Milwaukee v. NL Indus., Inc.*, 691 N.W.2d 888, 896 (Wis. Ct. App. 2004)). "A civil conspiracy claim has three elements: (1) the formation and operation of a conspiracy; (2) a wrongful act or acts done pursuant to the conspiracy; and (3) damage resulting from the act or acts." *Id.* (quoting *Onderdonk v. Lamb*, 255 N.W.2d 507, 510 (Wis. 1977)). And though he need not plead the detailed, behind-the-scenes aspects of the scheme—to which he likely has no access—a plaintiff must at least allege the conspiracy in more than conclusory fashion. *Onderdonk*, 255 N.W.2d at 510. "Dick and Jane conspired to commit a wrongful act" will not do.

Boyland's position is that the Dealerships' Amended Complaint does not answer any of the following questions, necessary to proceed on a civil conspiracy claim: (1) "[W]hat was the agreement between [Boyland] and Ms. De Jesus?"; (2) "When did they come to this agreement?"; (3) "How did they come to this agreement?"; (4) "Which person was supposed to perform which act to further the conspiracy?"; (5) "What was the goal of the conspiracy?"; (6) "How did the conspiracy work?"; and (7) "Which specific damages resulted directly from the conspiracy?" (ECF No. 13 at 6.) Some of these are foundational. A plaintiff who cannot identify the goal of an alleged conspiracy or any damages resulting therefrom has no case. *See Onderdonk*, 255 N.W.2d at 509 ("The gravamen of a civil action for damages resulting from an alleged conspiracy is [] not the conspiracy itself but rather the civil wrong which has been committed pursuant to the conspiracy and which results in damage to the plaintiff."). But Boyland goes too far in demanding third-person omniscience at the pleading stage. Almost no plaintiff alleging civil conspiracy will know how the conspirators came to their agreement; *i.e.*, over coffee and baklava in a booth at the back of a Greek diner. Courts, thus, look for "facts that show some agreement, explicit *or otherwise*, between the alleged conspirators on the common end sought and some cooperation toward the attainment of that end." *Bartley v. Thompson*, 542 N.W.2d 227, 234 (Wis. Ct. App. 1995) (quoting *Augustine v. Anti-Defamation League of B'nai B'rith*, 249 N.W.2d 547, 552 (Wis. 1977)) (emphasis added). Those facts are present here.

The Amended Complaint states that Boyland and De Jesus conspired to misappropriate the Dealerships' assets. (ECF No. 10 ¶9.) To accomplish this, they assigned themselves bogus bonuses and payroll expenditures. (*Id.* ¶¶10-21, 63.) They also used the Dealerships' company credit cards to make exorbitant purchases at Best Buy, Nordstrom, Franksville Veterinarian, Vanessa's Flowers, and other businesses. (*Id.* ¶¶22-25, 62.) The unauthorized purchases amounted to no less than $243,989 in 2021. (*Id.* ¶26.) No doubt, these allegations are not proof,

but they do not need to be. They paint enough of a picture of the purported conspiracy "to support the inference of an agreement" between Boyland and De Jesus to misappropriate the Dealerships' funds. *Kroeger v. Brautigam*, No. 2015AP466, 2016 WL 4512687, at *7 (Wis. Ct. App. Aug. 30, 2016).

The Dealerships allege the formation and operation of a conspiracy, wrongful acts done pursuant thereto, and damages. Their Amended Complaint is not so couched in generalities as to render these allegations wholly conclusory. They have, therefore, plausibly pleaded the necessary elements of a civil conspiracy claim.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 12), is **GRANTED**, **in part**, and **DENIED**, **in part**. The motion is granted with respect to Plaintiffs' claim for "Intentional Misrepresentation (Fraud)," and that claim is **dismissed**. The motion is denied with respect to Plaintiffs' claim for "Conspiracy."

Dated at Milwaukee, Wisconsin on September 13, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge